[Civ. No. 9027. First Appellate District, Division Two.—September 13, 1933.]

WILLIAM T. CEINAR, Appellant, v. D. N. JOHNSTON, Respondent.

Elmer E. Robinson and W. A. Lahanier for Appellant.

Henry E. Greer for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants for false imprisonment. The defendants filed a joint general demurrer "to the complaint". The record discloses that as to certain of the defendants the demurrer was overruled, but as to the defendant Johnston the demurrer was sustained. From the judgment entered in favor of the defendant Johnston the plaintiff has appealed. The record contains the original complaint and it also contains an amended complaint. We understand the plaintiff relies on the amended complaint and we will confine our remarks to that document.

The plaintiff alleged that on the eighth day of August, 1931, in answer to a complaint filed in the Justice's Court of Nicasio Township, County of Marin, State of California, charging him with disturbing the peace, that he appeared

before the defendant as justice of the peace and pleaded guilty to the complaint; that the defendant suspended plaintiff's sentence indefinitely and entered a judgment that plaintiff's sentence should take full force at any time that plaintiff failed to make monthly payments in the sum of $30 to his wife for the support of their son, who was to remain in the care and custody of his mother; that the plaintiff made certain payments to and including November 14, 1931; that thereafter, on March 8, 1932, the defendant, as justice of the peace, executed an abstract of the proceedings in the action theretofore commenced against him and indorsed thereon a commitment. Both documents are set forth *in haec verba*. Continuing, the plaintiff alleged that the plaintiff was arrested by the defendant Armstrong as constable, who delivered him into the custody of the defendant Sellmer as sheriff of Marin County, who received the plaintiff and incarcerated him from March 8, 1932, until March 17, 1932, the full term specified in the sentence imposed by the defendant Johnston on the eighth day of March, 1932.

In short, the allegations of the plaintiff's complaint are that the defendant as justice of the peace first divested himself of jurisdiction and thereafter proceeded to act. However, there are two sound answers to the contention. In the first place, whoever may be charged as a defendant for false imprisonment it is necessary for the complainant to plead the facts showing that the arrest was unlawful. (*Going* v. *Dinwiddie,* 86 Cal. 633 [25 Pac. 129].) Charging that the defendant indefinitely suspended the sentence was in effect to allege that the sentence was suspended for the maximum term. (*In re Herron,* 217 Cal. 400 [19 Pac. (2d) 4].) If the defendant in the criminal case consented there was no irregularity in suspending the sentence until March 8, 1932. (Pen. Code, sec. 1449.) If in this case the plaintiff would claim that the postponement of the sentence until March 8, 1932, was unlawful he was bound to have pleaded facts. We turn now to the other answer.

If a judicial officer has no jurisdiction of the person, the officer acts as an individual and not as an officer. (*Inos* v. *Winspear,* 18 Cal. 397.) If the purported charge contained in a complaint is something over which the statute has conferred no jurisdiction on the officer the same rule

applies for the same reason. (*De Courcey* v. *Cox*, 94 Cal. 665 [30 Pac. 95].) If, however, the justice of the peace acquires jurisdiction of the person and jurisdiction of the subject matter his acts thereafter will be considered as judicial and for which he will not be held civilly liable. (35 C. J. 471.) In *Bradley* v. *Fisher*, 13 Wall. (80 U. S.) 335, 354 [20 L. Ed. 646], Mr. Justice Field, writing the opinion of the court, said: "The exemption of judges of the superior courts of record from liability to civil suit for their judicial acts existing when there is jurisdiction of the subject-matter, though irregularity and error attend the exercise of the jurisdiction, the exemption cannot be affected by any consideration of the motives with which the acts are done. The allegation of malicious or corrupt motives could always be made, and if the motives could be inquired into judges would be subjected to the same vexatious litigation upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort. But for malice or corruption in their action whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecution in the form of impeachment, or in such other form as may be specially prescribed." In *Stephens* v. *Smith*, 159 Okl. 117 [14 Pac. (2d) 381], speaking of the liability of a justice of the peace, on page 382, the Supreme Court of Oklahoma said: "It clearly appears from this proceeding that the dereliction of the justice complained of was in the performance of a judicial function in a matter over which his court had jurisdiction of the subject-matter and of the parties. The rule of nonliability of judicial officers for their judicial decisions prevails in this state. To allow a disappointed litigant to sue the officer, entrusted by law with the decision of the matter in controversy, and to hold such officer personally liable for mistakes in rendering judicial opinions, would open the floodgates to a torrent that would practically destroy the last bulwark for the protection of human rights." (See, also, *Grant* v. *Williams*, 54 Mont. 246 [169 Pac. 286, 287].) In the case of *Wertheimer* v. *Howard*, 30 Mo. 420 [77

Am. Dec. 623], it was claimed that the rule would not extend to the issuance of an execution or a warrant because those acts were ordinarily performed by a clerk in most courts and therefore were ministerial. In reply to that argument the Supreme Court of Missouri said: "The difficulties in drawing a line of distinction between judicial and ministerial acts, in reference to the duties which our statutes have confided to justices of the peace, are not readily removed; and upon principles of public policy as well as equity, we are not disposed, in determining their responsibilities, to adopt the rules which have been applied to clerks. and sheriffs and other mere ministerial officers. The clerical and judicial acts of justices are mingled together from the beginning to the end of a suit, and it is not easy to separate the one from the other. Great inconvenience, we also apprehend, would arise from holding a justice responsible for a blunder in issuing an execution where his intentions have been altogether pure. The office, at least in the great majority of instances, is not one attended with large gains; nor can it generally be relied on for a mere subsistence, but must necessarily be filled by persons whose principal pursuit will not allow an appropriation of much time or labor to the attainment of accurate legal information, even upon those subjects with which they have officially to deal. That the justice is required or allowed to be his own clerk, is not a sufficient reason to divest him of his judicial character whenever he performs an act which a clerk, under other circumstances, would do. We have not been able to see, therefore, that, in issuing an execution, he is to be held responsible as a mere ministerial officer, but our inclination is to hold all his acts, which from the beginning to the end of a suit the law requires him to perform, as judicial, and involving only that responsibility which attends all judicial officers." Many of the courts have pointed out that an aggrieved defendant in a criminal case has a clear remedy and therefore that he should not be allowed to harass a judicial officer. (35 C. J. 472.) That reasoning may well be applied in the instant case because this plaintiff could have applied immediately for a release. (*Ex parte Slattery,* 163 Cal. 176 [124 Pac. 856].)

█ If it be asserted that the defendant had lost jurisdiction at the time he rendered the sentence the rule is the

same. In other words, having acquired jurisdiction of the subject matter and of the person, the judicial officer is not liable merely because his order was made too late. (*Horton v. Auchmoody,* 7 Wend. (N. Y.) 200.)

The judgment is affirmed.

Nourse, P. J., and Ogden, J., *pro tem.,* concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 6, 1933.