322 So.2d 602 (1975)
Wayne RIVELLO, Appellant,
v.
COOPER CITY, a Municipal Corporation, and John Harrington, Individually, Jointly and Severally, Appellees.
No. 74-1291.
District Court of Appeal of Florida, Fourth District.
November 21, 1975.
*603 Charles T. Whitelock and Martin H. Cohen of Hurth & Whitelock, Fort Lauderdale, for appellant.
Richard A. Sherman of Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, for appellee, Cooper City.
Ray Sandstrom of Sandstrom & Hodge, Fort Lauderdale, for appellee, John Harrington.
DIAMANTIS, GEORGE N., Associate Judge.
The Appellant-Wayne Rivello, who was the plaintiff below, appeals a final order dismissing his amended complaint against the appellees, City of Cooper City and John Harrington, who was the City's Municipal Judge.
The appellant's amended complaint seeks to charge the appellee, John Harrington, in three counts, with 1) negligence, 2) false imprisonment, and 3) malicious prosecution. The amended complaint seeks to charge the City with these three (3) claims based upon the theory of respondeat superior.
In summary, the amended complaint alleges that the appellant was sentenced by Judge Harrington to twenty (20) days in jail and a three hundred ($300.00) dollar fine, which was suspended on the condition that the appellant be placed on ninety (90) days probation during which time he was required to pay the sum of fifty ($50.00) dollars to a third party as restitution; that appellee-Harrington, in violation of statutory duty, did not place the appellant under the supervision of the Parole and Probation Commission; that after his probationary period was completed, Judge Harrington revoked the appellant's probation for having failed to comply with the condition of paying the fifty ($50.00) dollars restitution and issued an order of commitment, imprisoning the appellant for a period of twenty (20) days; that he was never advised of his right to have counsel and that the appellees did not furnish him counsel when he demanded the same; that he was incarcerated for a period of time until he was released upon a writ of habeas corpus issued by the circuit court; and that he was damaged in excess of twenty five hundred ($2500.00) dollars.
The first Count, which charges negligence, basically alleges that the appellees had an initial duty to place the appellant under supervised probation for the period of ninety (90) days and not on unsupervised probation; that Judge Harrington had a duty to inform the appellant of the length of his probation; and that once the ninety (90) day probationary period had expired, the appellees had a duty to release the appellant, all of which duties were breached by the appellees resulting in injury to the appellant.
In Count II, which claims false imprisonment, the appellant, in essence, alleges that these acts of the appellees were committed unlawfully without power which resulted in the false imprisonment of the appellant.
In Count III, which charges malicious prosecution, the appellant basically claims that the probation revocation proceeding was unlawful or maliciously instituted by appellee-Harrington, and the subject habeas corpus issued by the circuit court terminated these proceedings in favor of the appellant.
The crucial point in this appeal involves the question of whether Judge Harrington is immune from suit under the long established doctrine of judicial immunity.
In Florida, "a judge of a court of superior or general jurisdiction is not civilly liable for his judicial acts in excess of his jurisdiction when such acts involve affirmative decisions of the fact of the jurisdiction of such court, even though such decisions may be wholly erroneous, provided there is not a clear absence of jurisdiction." McDaniel v. Harrell, 81 Fla. 66, 87 So. 631, at page 632.
Interestingly, in McDaniel v. Harrell, supra, the Florida Supreme Court held that *604 a plea of judicial immunity was good to a declaration alleging the plaintiff was arrested, convicted and thereafter imprisoned upon failing to pay a fine for violating a city ordinance which was declared unconstitutional and void in a subsequent habeas corpus proceeding filed by that plaintiff. The Court, at page 634 of 87 So., pointed out that the defendant, who was mayor and municipal judge, had a jurisdiction of the person and subject-matter "when the case giving rise to this action was under consideration."
The Florida Supreme Court in McDaniel v. Harrell, supra, cites with approval the landmark United States Supreme Court opinion of Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). The Bradley decision, in which a plea of judicial immunity was upheld, involved a suit by an attorney against the judge presiding at the trial of one John H. Suratt for the murder of Abraham Lincoln. The trial judge, at the conclusion of that murder trial, without hearing and notice, directed that an order be entered in the court's records striking the name of the plaintiff-attorney from the roll of attorneys practicing in that court because of the attorney's rude conduct during a recess in that murder trial. Bradley, the apparent focal point of all discussion regarding judicial immunity, gave the following example of judicial conduct, which, although excessive, would still be considered immune from damages.
"But if, on the other hand, a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked." Bradley v. Fisher, supra, 80 U.S. (13 Wall.) at page 352.
The California case of Ceinar v. Johnston, 134 Cal. App. 166, 25 P.2d 28 (Cal. App. 1st 1933), which we have found, is analogous to the fact situation in the case at bar. In that case, the defendant, who was a justice of the peace, suspended the plaintiff's sentence indefinitely after he plead guilty to a charge of disturbing the peace, and the defendant entered a judgment to the effect that the plaintiff's sentence shall take full force at any time that the plaintiff failed to make certain monthly payments of child support to his wife. The plaintiff made these payments for approximately three or four months and then approximately four months after the plaintiff ceased making the support payments, the defendant, as justice of the peace, executed an abstract of the proceedings theretofore commenced against the plaintiff and endorsed thereon a commitment of the plaintiff. In Ceinar v. Johnston, supra, the California Appellate Court, citing Bradley, upheld a defense of judicial immunity to a false imprisonment action and at page 29 of 25 P.2d the court stated as follows:
"If, however, the justice of the peace acquires jurisdiction of the person and jurisdiction of the subject-matter, his acts thereafter will be considered as judicial, and for which he will not be held civilly liable. 35 C.J. 471. In Bradley v. Fisher, 13 Wall. (80 U.S.) 335, 354, 20 L.Ed. 646, Mr. Justice Field, writing the opinion of the court, said: `... . Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort... .'

*605 * * * * * *
"If it be asserted that the defendant had lost jurisdiction at the time he rendered the sentence, the rule is the same. In other words, having acquired jurisdiction of the subject-matter and of the person, the judicial officer is not liable merely because his order was made too late. Horton v. Auchmoody, 7 Wend. (N.Y.) 200." (Emphasis supplied).
Further, three Federal Court of Appeals' decisions, which we have also found, are pertinent to the case at bar. See Williams v. Sepe, 487 F.2d 913 (5 Cir.1973); Jacobson v. Schaefer, 441 F.2d 127 (7 Cir.1971); Gay v. Heller, 252 F.2d 313 (5 Cir.1958).
In Williams v. Sepe, supra, the Fifth Circuit upheld a summary judgment in favor of Judge Sepe based upon the plea of judicial immunity. In that case, Williams had apparently misrepresented himself as Judge Sepe's law clerk and the Judge had him committed for an indirect contempt of court. Williams was not given "written notice of the criminal contempt charged" as required by Rule 3.840 of the Florida Rules of Criminal Procedure, 34 F.S.A., before he was ordered arrested by Judge Sepe. Williams contended that this deviation from the statutory procedure resulted in an absence of subject matter jurisdiction and that the judge, therefore, was not shielded by judicial immunity. The Fifth Circuit, in Williams v. Sepe, rejected these contentions and upheld the defense of judicial immunity and cited Bradley where at page 914 of 487 F.2d, the Court stated:
"While it may be true that the procedural irregularities would necessitate a reversal of a conviction if one had been obtained on the facts of this case, see, e.g., State ex rel. Giblin v. Sullivan, 1946, 157 Fla. 496, 26 So.2d 509, the test for the abrogation of judicial immunity is whether there is a clear absence of all jurisdiction over the subject matter. Bradley v. Fisher, 1872, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646. The policy underlying the doctrine requires that its application not depend on the determination of `nice questions of jurisdiction.' Sullivan v. Kelleher, 1 Cir.1968, 405 F.2d 486, 487. The defects in the procedure employed in this case will not support a conclusion that there was a clear absence of all jurisdiction."
In Jacobson v. Schaefer, supra, the plaintiff was arrested and charged with having violated certain Wisconsin marijuana and narcotic drug laws and the defendant, who was a county judge, set bond at three thousand ($3,000.00) dollars and appointed counsel for the plaintiff. Subsequently, the plaintiff retained his own counsel and posted the three thousand ($3,000.00) dollars bond. The defendant then issued an order requiring the plaintiff to appear in person in open court to answer why he was unable to pay the fees of his court appointed counsel; why he was free on bail and why he was now able to employ his own counsel. Plaintiff and his retained counsel appeared and explained that the bail money had come from plaintiff's father and that plaintiff's fiancee (who later became his wife) financially helped to retain new counsel. When the plaintiff's father refused to have any of the three thousand ($3,000) dollars bond money used to pay attorneys' fees, the defendant ordered that $675.00 (the exact amount of the court-appointed attorney fees) of the three thousand ($3,000.00) dollars be refunded and then ordered inasmuch as there was no longer three thousand ($3,000.00) dollars on deposit, the plaintiff would be committed to the county jail and no further bail would be accepted without the defendant's specific approval.
The Seventh Circuit, in Jacobson v. Schaefer, supra, termed the conduct of the defendant-county judge "shocking" and without "justification" and observed it was for the purpose of using "his jurisdiction to coerce the reimbursement of allegedly owed legal fees" to the court-appointed counsel which was a "clear abuse of power." 441 F.2d 127, at pages 128 and 130. However, the Seventh Circuit, having previously cited Bradley, upheld the defense *606 of judicial immunity and affirmed a dismissal of the plaintiff's suit. The court at page 130 of 441 F.2d stated as follows:
"We have found nothing in the Wisconsin Statutes which expressly grants to judges in criminal cases the authority to attach conditions to bail that do not directly relate to assuring the criminal defendant's appearance at trial. However, we think that, in terms of a judge's `general jurisdiction over the subject matter', the defendant judge here probably had minimal jurisdiction to attach at least some conditions to bail. See: Wis. Stat. Sec. 253.12 (County Court Criminal trial jurisdiction), Sec. 954.16, 954.30, Whitty v. State, 34 Wis.2d 278, 149 N.W.2d 557 (1967). Moreover, the defendant judge did have jurisdiction to control substitution of attorneys in his court. Wis. Stat.Sec. 256.27(3). Obviously, the use of his jurisdiction to coerce the reimbursement of allegedly owed legal fees was a clear abuse of power, especially when other channels existed for recovery of any such fees which might have been owed. Wis. Stat. Sec. 957.263 Recovery of legal fees paid for indigent defendants. But the fact that an abuse occurred did not destroy the defendant judge's original jurisdiction as that term has been defined in the judicial immunity cases."
The case of Gay v. Heller, supra, arose out of federal civil rights and diversity of citizenship actions for damages and injunctive relief against the estate of a deceased attorney, a circuit judge and a court appointed curator. In that case, the plaintiff alleged that one McCaughan, who later became deceased but whose estate was a party defendant, advised the plaintiff to file a petition for a curator for her grandmother and misled the plaintiff as to the applicable Florida law as to her standing to file such a petition; that the defendant, Judge Holt, knowing of its invalidity appointed the co-defendant Heller as curator and McCaughan attorney for the curator; that the defendants conspired to liquidate a $60,000.00 estate of plaintiff's grandmother for $5,300.00, which amount was divided between the said curator and attorney; and that the judge entered void orders or judgments adjudging the plaintiff's grandmother to be domiciled in Florida when she was a permanent resident of New Jersey in order to get control of certain income from a New Jersey trust, awarding personal judgments totaling $10,000.00 against the plaintiff for additional attorney's and curator's fees, and holding the plaintiff in contempt of court and ordering her committed for 60 days, all without personal notice and an opportunity for a hearing. Plaintiff further alleged that she did not serve any of the 60 day sentence since she left Florida with her grandmother before the contempt proceedings had been brought, but that this judgment of commitment and the personal judgments totaling $10,000.00 were still unsatisfied as against her. The trial court dismissed the complaint as to all of the defendants, and the Fifth Circuit Court of Appeals, on the basis of judicial immunity, affirmed the dismissal order as to the curator and the circuit judge and at page 316 of 252 F.2d, the Appellate Court stated as follows:
"These allegations do not add up ... to permit a trial court, on a collateral attack, to find that the acts of the circuit court judge were `without the scope and limits of his jurisdiction.' Rammage v. Kendall, 168 Ky. 26, 181 S.W. 631, L.R.A. 1916C, 1295 as quoted in Farish v. Smoot, supra [58 So.2d 534]."
Under the provisions of Florida Special Acts, 59-1195, Section 6(29) Volume II, at page 911, and Section 27 Volume II, at pages 941-944, the Municipal Court of the appellee-City has the authority to impose suitable penalties for a violation of any City ordinance, rule, or regulation by fine not exceeding five hundred ($500.00) dollars or imprisonment not exceeding ninety (90) days, or both, and the authority to suspend any sentence imposed by that court.
*607 In this case, under Florida Special Acts 59-1195, Judge Harrington had jurisdiction to suspend the appellant's ninety-day sentence and had minimal jurisdiction over the subject matter to place the appellant on probation for such ninety-day period with the condition that he make restitution and possessed such minimal jurisdiction to enforce this condition. Even if the enforcement of this condition of probation some time subsequent to the expiration of the ninety (90) day period was in excess of the judge's jurisdiction, such act was not in "clear absence of all jurisdiction over the subject matter." See Bradley v. Fisher, supra, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872). In other words, having initially acquired jurisdiction of the subject matter and of the person, that judicial officer is not liable for having possibly acted in excess of his jurisdiction and because he did not timely take action to revoke appellant's probation for his failure to make restitution of fifty ($50.00) dollars as required by the terms of his probation. In the case at bar, there was not a clear absence of all jurisdiction over the subject matter which is necessary before judicial immunity can be abrogated.
We further hold that even assuming arguendo that Judge Harrington should have placed the appellant on supervised probation under the jurisdiction of the Florida Parole and Probation Commission,[1] appointed counsel for him[2] and advised him of the exact period of his probationary period, these alleged errors were at most irregularities attending the exercise of the municipal judge's original jurisdiction after he had acquired jurisdiction of the subject matter and person and were within the scope and limits of his jurisdiction.
The cases relied upon by the appellant can readily be distinguished. In Waters v. Ray, 167 So.2d 326 (Fla.App. 1st 1964), the plaintiff was testifying in the defendant-municipal judge's courtroom regarding charges of failing to have his vehicle under control and causing an accident when the defendant asked that the plaintiff produce his driver's license which the plaintiff did produce. Upon seeing it was a New York license, the defendant had the plaintiff immediately arrested for not having a valid driver's license. In that case, there clearly was no such offense of failure to have a valid driver's license and no proceedings or charges had been instituted regarding this alleged failure to have a valid driver's license. It was evident that the defendant-municipal judge, without any proceedings, formal or informal, having been instituted, had the plaintiff arrested for an offense which clearly did not exist. In Farish v. Smoot, 58 So.2d 534 (Fla. 1952), the defendant-municipal judge ordered the plaintiff rearrested after he had been released under a writ of habeas corpus issued by the circuit court upon the posting of a $500.00 bond, which the plaintiff posted, and the defendant was fully aware of the facts regarding the habeas corpus proceeding and the posting of the necessary bond. In other words, jurisdiction of the municipal court in that case had been superseded or completely suspended and had vested in the circuit court and the defendant was fully aware of these facts.
Consequently, in both Waters v. Ray, supra, and Farish v. Smoot, supra, the municipal court was wholly or totally without any jurisdiction over the subject matter.
Consequently, we hold that the trial court correctly dismissed the instant action, as to Judge Harrington, based upon judicial immunity. The public policy underlying this doctrine is obvious. Without such immunity, all judges' decisions could be collaterally *608 attacked in suits brought against them and the finality of judicial decisions would be impaired. Further, without judicial immunity, there would certainly be a chilling effect upon the independent decision making role of the judiciary and upon the willingness of qualified individuals to serve in judicial positions.
Additionally, our research has revealed another reason that this suit should be dismissed as to the appellee-City.[3] A municipality has sovereign immunity regarding the judicial or quasi-judicial acts of its officials. See Hargrove v. Town of Cocoa Beach, 96 So.2d 130, at page 133 (Fla. 1957); Middleton v. City of Fort Walton Beach, 113 So.2d 431 (Fla.App. 1st 1959).
In Hargrove v. Town of Cocoa Beach, supra, Justice Thornal, at page 133 of 96 So.2d, stated the following rule regarding the sovereign immunity of a municipality in relation to the judicial acts of its officials:
"We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049, and Akin v. City of Miami, Fla. 1953, 65 So.2d 54."
As a caveat to this opinion, we would observe that the appellant had various available remedies, including the one of habeas corpus of which he did avail himself. Finally, we would state that nothing in this opinion is intended to pass directly or inferentially on the ultimate validity of the probation given the appellant and the procedural aspects and events regarding its imposition and revocation.
Accordingly, the final order appealed from is affirmed.
Affirmed.
OWEN and MAGER, JJ., concur.
NOTES
[1] Attorney General's Opinion 072-377 (pages 647-648) dated October 30, 1972, indicates that a person convicted for violating a municipal ordinance cannot be placed under the supervision of the Parole and Probation Commission.
[2] Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) which required counsel, was decided subsequent to the events which have given rise to this present action.
[3] If the result reached by the trial court is proper on any theory, this court must affirm. Braren v. Lawyers' Realty Abstract Co. of Sarasota, 196 So.2d 244, at page 245, and cases cited therein (Fla.App.2nd 1967), cert. discharged 206 So.2d 385 (Fla. 1968).