776 F.2d 942
 54 USLW 2297
 Diana Christine DYKES, et al., Plaintiffs-Appellants,
v.
A.J. HOSEMANN, Jr., etc., Thomas A. Weinberg, etc., Roger
Francis Dykes, Sr., etc., Roger Francis Dykes,
Jr., etc., and Kenneth W. McIntosh,
etc., Defendants-Appellees.
 No. 83-3347.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 18, 1985.
 
 J. Calvin Jenkins, Jr., William K. Meyer, Francis B. Burch, Baltimore, Md., for plaintiff-appellant.
 Douglas E. Whitney, Dist. Counsel, Dept. of H & R Serv., James A. Edwards, Orlando, Fla., Gerald B. Curington, Asst. Atty. Gen., Tallahassee, Fla., Brian R. Toung, Delia Doyle Rose, Daytona Beach, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON, and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 We have taken this case en banc to examine the scope of judicial immunity in a suit for damages under 42 U.S.C. Sec. 1983 (1982).[1] A panel of this court in Dykes v. Hosemann, 743 F.2d 1488 (11th Cir.1984), held that, where a judge performs a judicial act affecting the rights of a party over whom he knows the court has no personal jurisdiction, the judge may be liable to such party for money damages. We find this result both contrary to precedent and policy and reassert the common law doctrine that a judge enjoys absolute immunity where he or she had subject matter jurisdiction over the matter forming the basis for such liability.
 
 I.
 
 2
 This case grew out of a domestic dispute. The judicial act in question is a juvenile court order declaring a child dependent and temporarily awarding custody of the child to the father.
 
 
 3
 Diana Dykes and Roger Francis "Buzzy" Dykes, Jr. began experiencing marital difficulties in 1977. In November of that year, Buzzy took their only child, Aaron, from their home in Pennsylvania to his parents' house in Florida. It is alleged that Buzzy and his father, Roger F. Dykes, a Brevard County, Florida Circuit Court judge, formulated a plan to obtain a colorable court order awarding custody of Aaron to Buzzy. Judge Dykes telephoned Judge Anthony Hosemann, Jr., a member of his court then assigned to the court's juvenile division[2] for advice. Judge Hosemann counseled that Buzzy come before him with a "dependency" petition and referred Judge Dykes to the Florida Department of Health and Rehabilitative Services (HRS).
 
 
 4
 Buzzy and Judge Dykes went to an HRS office and requested assistance in filing a dependency petition but were informed by an agency official that Aaron did not qualify as a dependent child.[3] After persistent requests, the official called his supervisor who agreed to assist in the preparation of the petition as long as it was not officially sponsored by HRS.[4] The following day the petition was presented to Judge Hosemann, and he signed an order declaring Aaron to be a "dependent child" and temporarily awarding custody to Buzzy.[5] Diana, the mother, was never served with a summons and a copy of the petition, as required by statute.[6]
 
 
 5
 Diana and her son[7] subsequently filed suit under 42 U.S.C. Secs. 1983, 1985 (1982)[8] alleging that Buzzy, Buzzy's father, Judge Hosemann, and Thomas Weinberg, the HRS supervisor who assisted in the preparation of the dependency petition,[9] conspired to deprive them of their constitutional rights.[10] We today focus only on the plaintiffs' claims made against Judge Hosemann and determine whether under the facts of the case he is immune from suit.
 
 II.
 
 6
 Since the seventeenth century, common law has immunized judges from suit for judicial acts within the jurisdiction of the court.[11] This doctrine of judicial immunity was embraced by the Supreme Court as early as 1872 when the Court noted that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequence to himself." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872).[12] More recently, the Court held that Congress, in enacting section 1983, did not intend to abolish the doctrine of judicial immunity in cases alleging state deprivation of federal constitutional rights. Pierson v. Ray, 386 U.S. 547, 554-55, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). In Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Court established a two-part test for determining whether a judge enjoys absolute immunity from money damages under section 1983. First, did the judge deal with the plaintiff in his judicial capacity? Id. at 362, 98 S.Ct. at 1107. If he did not, then judicial immunity does not lie. If he did act in such a capacity, then the focus is on whether the judge acted in the " 'clear absence of all jurisdiction.' "[13] Id. at 357, 98 S.Ct. at 1105 (quoting Bradley, 80 U.S. (13 Wall.) at 351). In this case, then, we must determine whether Judge Hosemann acted in his judicial capacity in finding dependency and awarding temporary custody of Aaron to Buzzy and, if so, whether he acted in the absence of all jurisdiction.
 
 A.
 
 7
 In Harper v. Merckle, 638 F.2d 848 (5th Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981),[14] the court focused on the following factors in determining that a judge's conduct constituted a judicial act:
 
 
 8
 (1) the precise act complained of ... is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.
 
 
 9
 Id. at 858 (quoting McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir.1972)). Clearly, Judge Hosemann's signing of the order finding Aaron to be a dependent child and awarding temporary custody of the child to Buzzy satisfies the indicia of a judicial act. Appellants, however, argue that Judge Hosemann's alleged agreement prior to the dependency proceedings to grant Buzzy custody of Aaron was a nonjudicial act. They rely on Rankin v. Howard, 633 F.2d 844, 847 (9th Cir.1980), cert. denied, 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981), in which the Ninth Circuit held that a judge's private, prior agreement to decide an issue in favor of one party was not a judicial act for purposes of judicial immunity. This circuit, however, has declined to follow Rankin. In Harper v. Merckle, 638 F.2d at 856 n. 9, we stated that "even a judge who is approached as a judge by a party [and conspires with such party] to violate [another party's federal constitutional rights] is properly immune from a damage suit" brought under section 1983. We relied on Dennis v. Sparks, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), where, in reference to the dismissal from a case of a judge alleged to have conspired with private parties, the Supreme Court noted that "[t]he courts below concluded that the judicial immunity doctrine required dismissal of the Sec. 1983 action against the judge who issued the challenged injunction, and as the case comes to us, the judge has been properly dismissed from the suit on the immunity grounds." Id. at 27, 101 S.Ct. at 186. In addition, in Scott v. Dixon, 720 F.2d 1542, 1546-47 (11th Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984), affirming the dismissal of a claim against a court clerk, we held that judicial immunity would be assumed despite the appellants' assertion that the court clerk and another defendant conspired with one another or reached an understanding concerning a judicial act to be performed. It is therefore clear that this circuit has rejected the Rankin rationale and refuses to divest a judge of his absolute immunity from suit notwithstanding a prior agreement he may have made with a party to the controversy. Were we to follow Rankin, judges, on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid. We find this circuit's precedent, which avoids the possibility of such a result, to be a more accurate reflection of the scope and rationale of the doctrine as it has been fashioned by the Supreme Court.[15]
 
 B.
 
 10
 Appellants allege that Judge Hosemann acted in "the clear absence of all jurisdiction" because he lacked subject matter jurisdiction over the dependency proceeding and jurisdiction over their persons; therefore, he cannot claim immunity. Section 39.02(1) of the 1977 Florida Statutes provided that "[t]he circuit court shall have exclusive original jurisdiction of proceedings in which a child is alleged to be dependent." There is no question that Judge Hosemann was a circuit court judge and that the petition presented to him on November 22, 1977 alleged that Aaron was a "dependent" child. Thus it is clear that Judge Hosemann had subject matter jurisdiction over the case. That he may have incorrectly concluded that Aaron actually was dependent does not affect the fact that it was within his power to make that determination. See Stump v. Sparkman, 435 U.S. at 356-57, 98 S.Ct. at 1105.
 
 
 11
 Judge Hosemann, however, did lack personal jurisdiction over one of the parties to the dispute. He signed the order finding Aaron a dependent child and awarded custody to Buzzy even though no summons, accompanied by a copy of the petition, was ever directed to Diana as required by statute.[16] The issue we must resolve is whether a judge who acts within his or her subject matter jurisdiction before acquiring personal jurisdiction over a party to the suit can be made to answer in money damages.
 
 
 12
 In Stump v. Sparkman, the Supreme Court counseled that
 
 
 13
 the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."
 
 
 14
 435 U.S. at 356-57, 98 S.Ct. at 1105 (citing Bradley v. Fisher, 80 U.S. (13 Wall.) at 351). Although the Court referred to jurisdiction in general terms, the context of the statement indicates that the Court was referring to a complete absence of subject matter jurisdiction. The passage itself cited to a footnote in which the Court presented an example of a lack of subject matter jurisdiction.[17] More importantly, the language in Bradley from which Stump quotes, more fully reads "clear absence of all jurisdiction over the subject matter." Bradley v. Fisher, 80 U.S. (13 Wall.) at 351 (emphasis added).
 
 
 15
 Courts applying Stump v. Sparkman have interpreted the Court as requiring a showing of an absence of subject matter jurisdiction to defeat a judge's assertion of immunity. In Emory v. Peeler, 756 F.2d 1547, 1553 (11th Cir.1985), the court, upon finding a judicial act, proceeded to the second prong of Stump's test: "did the judge's conduct fall clearly outside his subject matter jurisdiction?" Upon finding subject matter jurisdiction, the court considered the jurisdiction prong satisfied and did not inquire into the existence of personal jurisdiction. In Harper v. Merckle, 638 F.2d at 857-58, the court noted that Stump cast aside considerable debris that tended only to burden analysis and elucidated a cogent two-part test to determine the applicability of judicial immunity: immunity extends to all judicial acts "unless those acts fall clearly outside the judge's subject matter jurisdiction." See King v. Love, 766 F.2d 962, 965 (6th Cir.1985) ("A judge acts in the clear absence of all jurisdiction if the matter upon which he acts is clearly outside of the subject matter jurisdiction of the court over which he presides."); Holloway v. Walker, 765 F.2d 517, 523 (5th Cir.1985) ("Where a judge does not clearly lack all subject-matter jurisdiction, he does not clearly lack all jurisdiction....") (emphasis in the original); Adams v. McIlhany, 764 F.2d 294, 298 (5th Cir.1985) ("Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes."); see also DiRuggiero v. Rodgers, 743 F.2d 1009, 1021 (3d Cir.1984); Smith v. Bacon, 699 F.2d 434, 436 (8th Cir.1983); White v. Bloom, 621 F.2d 276, 279 (8th Cir.), cert. denied, 449 U.S. 995, 101 S.Ct. 533, 66 L.Ed.2d 292 (1980) and 449 U.S. 1089, 101 S.Ct. 882, 66 L.Ed.2d 816 (1981).[18]
 
 
 16
 Appellants once again urge the court to adopt the approach adopted by the Ninth Circuit in Rankin v. Howard, 633 F.2d 844 (9th Cir.1980), cert. denied, 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981). In Rankin, the court held that a judge loses his judicial immunity, regardless of the existence of subject matter jurisdiction, if he or she acts in absence of personal jurisdiction. We view this decision as contrary to Supreme Court and Eleventh Circuit precedent as well as an unwise restriction of a time-tested doctrine.[19]
 
 
 17
 The Court in Bradley v. Fisher, identified five policy reasons for judicial immunity: First, and foremost, a judge must be free to act upon his own convictions, without apprehension of personal consequences; second, the controversiality and importance of the competing interests in a case before a court make it likely that the losing party may be overly willing to ascribe malevolent motives to the judge; third, judges faced with the prospect of defending damages actions and, perhaps, satisfying money judgments would be driven to wasteful and destructive self-protection devices and, moreover, may be less inclined to administer justice; fourth, alternative remedies such as appeal and impeachment reduce the need for private rights of action against judges; and fifth, the ease of alleging bad faith would make a qualified "good faith" immunity virtually worthless because judges would constantly be forced to defend their motivations in court. 80 U.S. (13 Wall.) at 347-54. These factors are still important today. See Butz v. Economou, 438 U.S. 478, 508-09, 98 S.Ct. 2894, 2912, 57 L.Ed.2d 895 (1978).
 
 
 18
 Withdrawing judicial immunity where a judge has subject matter but not personal jurisdiction over a party affected by his ruling conflicts with all of these policies. Unlike questions of subject matter jurisdiction, which generally require only statutory intrepretation, personal jurisdiction depends upon facts that a judge is not likely to be able to verify first hand. A judge, for example, would be particularly vulnerable in issuing ex parte restraining orders, see, e.g., Fla.R.Civ.P. 1.610, where time constraints often dictate that he rely on the representations of the party before him in determining whether personal jurisdiction has been or can be obtained over the absent party. Frequently, the question of whether a nonresident can be reached by the court's process cannot be decided until the litigation is well underway;[20] sometimes the decision is made in a collateral proceeding, after judgment is entered, when, for example, the judgment creditor seeks to levy on the nonresident party's assets. In sum, to require a judge to defend a charge that he knowingly entered an order adversely affecting a party over whom the court had not acquired personal jurisdiction would be to ignore the still valid policy considerations articulated by the Supreme Court in Bradley v. Fisher. We accordingly uphold the district court's ruling that Judge Hosemann need not appear and defend appellants' claims against him.
 
 III.
 
 19
 Having disposed of the issue we concluded to be en banc-worthy, we remand this case to the panel that initially considered it for such further consideration as the panel deems appropriate.
 
 
 20
 AFFIRMED in part and REMANDED to the panel.
 
 
 21
 TJOFLAT, Circuit Judge, concurring in part and dissenting in part in which FAY and ANDERSON, Circuit Judges, join:
 
 
 22
 I join in the majority's affirmance of the district judge's dismissal of Judge Hosemann from this case because I find that, in addition to being immune from a section 1983 suit, Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), mandates that the suit against him be dismissed. I dissent, however, from the majority's remand of the case as to the other appellees because I also read Parratt as requiring that the claims against the remaining appellees be dismissed, as well.
 
 
 23
 I view this case as an ordinary abuse of process claim. Diana complains that Buzzy, with the aid of the other appellees, deliberately used a dependency proceeding for a purpose for which it was not designed, i.e., to deprive her of her parental right to the shared custody of her child and to deprive the child of the benefit of such custody. Since Aaron was not a dependent child,[1] Buzzy could not properly invoke Florida's child dependency law to obtain his custody. Buzzy's appropriate recourse under Florida law, if he wanted to obtain sole custody of Aaron, was to sue Diana for divorce and request the court to award him temporary (pending the litigation) and permanent custody of the child. See Fla.Stat. Sec. 61.13 (1977).
 
 
 24
 Florida law provides that the deliberate use of a legal procedure, whether criminal or civil, for a purpose for which it was not designed constitutes a tort, abuse of process. See Bothmann v. Harrington, 458 So.2d 1163, 1169 (Fla.Dist.Ct.App.1984) (an abuse of process action exists when there is "use of the process for an immediate purpose other than that for which it was designed") (emphasis in original) (citing Restatement (Second) of Torts Sec. 682 comment 6 (1977) and W. Prosser, Handbook of the Law of Torts Sec. 121 (4th ed. 1971)); Gause v. First Bank of Marianna, 457 So.2d 582, 584 (Fla.Dist.Ct.App.1984); Peckins v. Kaye, 443 So.2d 1025, 1026 (Fla.Dist.Ct.App.1983); McMurray v. U-Haul Co., 425 So.2d 1208, 1209 n. 1 (Fla.Dist.Ct.App.1983) ("In order to sustain an action for abuse of process two elements are essential, (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.") (quoting Farmers Gin Co. v. Ward, 73 N.M. 405, 406, 389 P.2d 9, 11 (1964)).[2]
 
 
 25
 If Diana's factual allegations are true, Buzzy and those who conspired with him are liable to her, in her individual and representative capacities, in money damages for the injuries she and Aaron sustained. Diana has not sued them for abusing Florida's dependency procedure, however. Rather, invoking section 1983 she seeks compensation for such injuries under the theory that the State of Florida denied her and Aaron the due process of law guaranteed them by the fourteenth amendment.[3] Her theory is foreclosed by Parratt.
 
 
 26
 In Parratt, Nebraska prison officials failed to follow normal procedures for receipt of packages mailed to prisoners and lost a prisoner's hobby kit. The prisoner sued the officials under section 1983 to recover the value of the lost hobby kit, alleging that the officials, acting for the state, had deprived him of his property without due process of law in violation of the fourteenth amendment.[4] The district court entered summary judgment for the prisoner, and the court of appeals affirmed. The Supreme Court, noting that the fourteenth amendment protects only against deprivations without due process of law, focused on the question of what process was due the prisoner. Parratt, 451 U.S. at 537, 101 S.Ct. at 1914. The Court first observed that the prison officials' action was random and not sanctioned by the state. Because the state could not have anticipated such random activity, it would have been impossible for the state to have provided the prisoner any process, such as a hearing, prior to the deprivation. Nebraska law, however, did provide the prisoner a make-whole damages remedy. Finding that the damages remedy was all the process the state could have provided him under the circumstances, the Court concluded that the prisoner had not been deprived of his property without due process of law. Id. at 541-44, 101 S.Ct. at 1916-17.
 
 
 27
 Parratt thus stands for the proposition that, where state law provides a make-whole damages remedy to a person whose property has been taken or destroyed by the random tortious conduct of a state agent, the state has accorded that person all the process he is due under the fourteenth amendment due process clause simpliciter. In other words, Parratt treats the claimant as if he had already been compensated in full by the state for his loss and therefore accorded due process.
 
 
 28
 Parratt has been extended by the better reasoned opinions to apply to deprivations of liberty as well as property interests. See, e.g., Wilson v. Beebe, 770 F.2d 578, 584 (6th Cir.1985) (en banc); Thibodeaux v. Bordelon, 740 F.2d 329, 337-38 (5th Cir.1984); Daniels v. Williams, 720 F.2d 792, 794-96 (4th Cir.1983); Ellis v. Hamilton, 669 F.2d 510, 515 (7th Cir.), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); Rutledge v. Arizona Board of Regents, 660 F.2d 1345, 1352 (9th Cir.1981), aff'd on other grounds, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). But see Brewer v. Blackwell, 692 F.2d 387, 394 (5th Cir.1982). Certainly Parratt's reasoning is unaffected by which fourteenth amendment interest is deprived. A state's inability to provide predeprivation process, because the action of the state employee was unauthorized and random, exists regardless of which due process interest is involved. Furthermore, adequate damages remedies may be available not only for property interests but also for liberty and life interests. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971) ("[h]istorically damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty"); Thibodeaux v. Bordelon, 740 F.2d at 338. Finally, the Court in Parratt implicitly acknowledged the applicability of its rationale to deprivations of liberty interests by its discussion of Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Ingraham was a section 1983 class action brought on behalf of school children who alleged a deprivation of liberty without due process of law when their public school teachers paddled them for disciplinary reasons without providing them a prior hearing. The Court acknowledged the children's liberty interest but noted that an adequate damages remedy, in the form of a suit for the tort of assault and battery, existed in state law. Recognizing that a hearing prior to each school paddling was impractical, the Court concluded that the state remedy was the only process required. Ingraham, 430 U.S. at 674-82, 97 S.Ct. at 1414-18. By drawing on Ingraham, the Court indicated that Parratt was designed to apply to liberty interests such as those involved in this case.
 
 
 29
 In my view, Parratt requires the dismissal of this section 1983 suit. This case tracks Parratt in all its essential elements: (1) appellants seek money damages;[5] (2) only violations of fourteenth amendment due process simpliciter rights are alleged;[6] and (3) the act of which appellants complain, the appellees' misuse of Florida's dependency law,[7] was, to the extent of the state's involvement through Judge Hosemann, random conduct not sanctioned by the state. Quite to the contrary, the state condemned such conduct by subjecting appellees Buzzy Dykes, Judge Dykes, Thomas Weinberg, and Kenneth McIntosh to possible tort liability in the form of a damages action for abuse of process and Judge Hosemann to possible criminal liability, see Fla.Stat. Sec. 839.25 (1983),[8] discipline (including removal from office), see Fla.Const. art. V, Sec. 12, or impeachment, see Fla.Const. art. 111, Sec. 17. In addition, Judge Hosemann's dependency order was subject to modification or vacation (if, for example, Diana, after learning of the order's entry appeared to contest it), see Fla.Stat. Sec. 39.11(3) (1977), or reversal on appeal, see Fla.Stat. Sec. 39.14(1) (1977).
 
 
 30
 Appellants might argue that Parratt does not foreclose their suit against Judge Hosemann because the state, in applying its doctrine of judicial immunity,[9] failed to provide them a make-whole damages remedy against him. In short, the state has not accorded the process appellants are due. The rationale of Parratt is based upon an inquiry into what process is due. With respect to Judge Hosemann, then, the question is whether Florida's immunization of judges from suit and the corresponding absence of a tort remedy for judicial wrongs provides an injured party less process than he is due. I find that it does not.
 
 
 31
 Courts have consistently upheld the use of judicial immunity in section 1983 suits. See Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); Supreme Court v. Consumers Union of the United States, Inc., 446 U.S. 719, 734-35, 100 S.Ct. 1967, 1976, 64 L.Ed.2d 641 (1980); Stump v. Sparkman, 435 U.S. 349, 355-56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978). In Pierson v. Ray, 386 U.S. 547, 554-55, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967), the Court found no indication that Congress, in enacting section 1983, intended to eliminate the doctrine of judicial immunity. These cases clearly imply that judicial immunity is constitutionally permissible and that the resulting absence of an action for money damages to remedy a judge's tortious conduct does not violate the injured party's due process rights. See also Martinez v. California, 444 U.S. 277, 281-83, 100 S.Ct. 553, 557-58, 62 L.Ed.2d 481 (1980) (state does not deny due process simply by granting reasonable tort immunity to state entities and officials). This being so, a state accords an injured party all of the process he is due even though it immunizes its judges from suit. See Rittenhouse v. DeKalb County, 764 F.2d 1451, 1456-58 (11th Cir.1985) (involving statutorily created municipal immunity). Because Florida's immunization of Judge Hosemann from tort damages did not violate appellants' due process rights, Parratt requires that the section 1983 suit against him be dismissed.
 
 
 32
 In summary, Parratt mandates this section 1983 suit be dismissed as to all of the appellees. This should not be surprising for, when a state provides all the process possible, it is difficult to interpret the fourteenth amendment as requiring more.
 
 HATCHETT, Circuit Judge, Dissenting:
 
 33
 On the difficult issue presented in this case, the scope of judicial immunity in a suit for damages under 42 U.S.C. Sec. 1983, the law in the Eleventh Circuit is now made clear. The en banc court holds that judicial immunity is complete, unqualified, and without exception. According to the majority, judicial immunity even protects a judge who acts without subject matter jurisdiction, without personal jurisdiction, and who unlawfully conspires with a party to violate another party's federal constitutional rights. As the majority concedes, no precedent, Supreme Court or otherwise, requires such a broad definition and application of the judicial immunity doctrine. Contrary to the majority's view, no policy considerations justify such a result.
 
 
 34
 More importantly, the majority's opinion implicitly repeals one third of a congressional enactment specifically designed to protect the federal constitutional rights of citizens from deprivations by state officers, including judges. In 42 U.S.C. Sec. 1983 (1982), Congress provided:
 
 
 35
 Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. [Emphasis added.]
 
 
 36
 With the filing of the majority opinion, this important enactment for the protection of citizens of the United States may as well read: "Every person, [except a judge in Florida, Georgia and Alabama]...." Judges in these former states of the confederacy will be able to deal willy nilly with the rights of citizens without having to account for willful unconstitutional actions. This important congressional enactment is amended by this opinion to apply only to state officials in the legislative and executive branches. It is another whittling away of section 1983's application. I respectfully dissent.[1]
 
 
 37
 To demonstrate the scope of the majority's opinion, assume that women and minorities are picketing a city council meeting to influence the city council's vote on the paving of streets and the availability of jobs in municipal government. Assume further that a judge, dissatisfied with this method of expression of a grievance, instigates a meeting with the mayor at which the judge and the mayor conspire to end the lawful demonstration. Assume also that the judge, knowingly acting without jurisdiction and with knowledge that the demonstration is lawful, causes the demonstrators to be arrested, incarcerated, held without bail, and submitted to a trial. Under this en banc opinion, no action for damages may be brought against the judge in the Eleventh Circuit.[2]
 
 
 38
 If the judicial action inflicts the intended damage by killing the demonstrators' political momentum, making injunctive relief useless, the victims will lack any remedy for the violation of their rights. In a state with a political climate which is hostile to freedom of association, a judge could repeatedly interfere with constitutional rights without being held accountable. This hypothetical may seem far fetched, but it is not; this is the exact fact pattern that section 1983 was enacted to address and which it has addressed since its enactment.
 
 
 39
 It is difficult to understand how every person in the United States may be held accountable in damages for conspiring to violate another person's federal constitutional rights, except those persons trained in constitutional guarantees, charged with interpreting the constitution, and oath bound to deal fairly with parties to litigation.
 
 
 
 [1]
 42 U.S.C. Sec. 1983 (1982) provides:
 Sec. 1983. Civil action for deprivation of rights
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
 
 
 [2]
 The Brevard Circuit Court is a multi-judge court of general jurisdiction. For administrative purposes, the court is divided into civil, criminal, and juvenile divisions
 
 
 [3]
 Under Florida law then in effect, a "dependent child" was a defined term:
 (8) "Dependent child" means a child who:
 (a) Has been abandoned by his parents or other custodians.
 (b) For any reason, is destitute or homeless.
 (c) Has not proper parental support, maintenance, care, or guardianship.
 (d) Because of the neglect of his parents or other custodians, is deprived of education as required by law, or of medical, psychiatric, psychological, or other care necessary for his well-being.
 (e) Is living in a condition or environment such as to injure him or endanger his welfare.
 (f) Is living in a home which, by reason of the neglect, cruelty, depravity, or other adverse condition of a parent or other person in whose care the child may be, is an unfit place for him.
 (g) Is surrendered to the Department of Health and Rehabilitative Services or a licensed child-placing agency for purpose of adoption.
 (h) Has persistently run away from his parents or legal guardian.
 (i) Being subject to compulsory school attendance, is habitually truant from school.
 Fla.Stat. Sec. 39.01(8) (1977).
 In 1978, the Florida State Legislature revised Chapter 39, and it became known as the Florida Juvenile Justice Act, with new sections effective October 1, 1978.
 
 
 [4]
 Under Florida law a dependency petition could be filed by the state attorney, an authorized agent of the division of youth services, or "any other person who has knowledge of the facts alleged or is informed of them and believes that they are true." Fla.Stat. Sec. 39.05(2) (1977). In this case Buzzy filed the petition
 
 
 [5]
 Implicit in the court's order was the notion that the court would revisit the question of who should have custody of Aaron if Diana or any other interested party demonstrated that a different custodial arrangement would be more appropriate
 
 
 [6]
 The statute provided:
 (2) Upon the filing of a petition containing allegations of facts which, if true, would constitute the child therein named a dependent child ..., and upon the request of the petitioner, the clerk or deputy clerk shall issue a summons.
 (3) The summons shall require the person on whom it is served to appear for a hearing at a time and place specified. The time shall not be less than 24 hours after service of the summons. If the child is not detained by an order of the court, the summons shall require the custodian to produce the child at the said time and place. A copy of the petition shall be attached to the summons.
 (4) The summons shall be directed to, and shall be served upon, the following persons:
 ....
 (b) The parents; and
 (c) The legal custodians, actual custodians, and guardians ad litem [of the child], if there be any other than the parents.
 Fla.Stat. Sec. 39.06 (1977).
 
 
 [7]
 Diana sued in behalf of her son, a minor, in a representative capacity, as his "mother and next friend."
 
 
 [8]
 The district court dismissed the section 1985 claim for lack of an allegation of class-based animus. Appellants have not appealed this decision
 
 
 [9]
 Also included as a defendant was Kenneth McIntosh, Buzzy's lawyer
 
 
 [10]
 The complaint alleged that the defendants had denied the plaintiffs' procedural and substantive due process rights and their right to equal protection of the law guaranteed them by the fourteenth amendment. On appeal, the plaintiffs abandoned their equal protection and substantive due process claims. Dykes v. Hosemann, 743 F.2d 1488, 1493 n. 6 (11th Cir.1985). Consequently, the only constitutional claims before us concern the denial of procedural due process
 
 
 [11]
 Lord Coke's opinion in Floyd v. Barker, 77 Eng.Rep. 1305 (Star Chamber 1607), ushered in the modern era of judicial immunity by establishing the immunity of judges of courts of record, thereby preserving the independence of those courts from review by the Star Chamber, which was under control of the king. In that case, Lord Coke enunciated for the first time what are now considered the modern public policy reasons for the doctrine: (1) the need for finality; (2) the need for maintaining public confidence in the system of justice; and (3) the need for maintaining the independence of the judicial system. Lord Coke refined the doctrine in The Marshalsea, 77 Eng.Rep. 1027 (Star Chamber 1612), which held that actions taken by a court lacking subject matter jurisdiction were coram non judice --before a person who was not a judge--see Bowser v. Collins, Y.B.Mich. 22 Edw. 4, f. 30, pl. 11 (1483), and rendered a judge liable for the consequences of his judicial acts. Subsequent cases further refined the doctrine of judicial immunity. See Peacock v. Bell, 85 Eng.Rep. 84 (K.B.1667) (burden of pleading and proving lack of jurisdiction placed on plaintiff); Hamond v. Howell, 86 Eng.Rep. 1035, 1037 (C.P.1677) (refusing to apply the jurisdictional limit rule of The Marshalsea to a judge acting "quatenus a judge"); Gwinne v. Poole, 125 Eng.Rep. 858 (C.P.1692) (judge retains immunity unless he was aware of facts suggesting a lack of jurisdiction). See generally Block, Stump v. Sparkman and the History of Judicial Immunity, 1980 Duke L.J. 879
 
 
 [12]
 Even prior to Bradley v. Fisher, the Court, in Randall v. Brigham, 74 U.S. (7 Wall.) 523, 537, 19 L.Ed. 285 (1869), stated that judges are not liable "to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation, unless perhaps where the acts are palpably in excess of the jurisdiction of the judges, and are done maliciously or corruptly." In Bradley v. Fisher, the Court reconsidered this statement and concluded that "the qualifying words used were not necessary to a correct statement of the law." 80 U.S. (13 Wall.) at 351
 
 
 [13]
 Judicial immunity does not bar prospective injunctive relief against a judicial officer acting in his judicial capacity. See Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Such relief, however, was not sought in this case
 
 
 [14]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [15]
 At least one other circuit has specifically rejected Rankin. See Holloway v. Walker, 765 F.2d 517, 522 (5th Cir.1985). The Ninth Circuit itself appears to have retreated from the holding of the case. See infra note 19
 
 
 [16]
 See supra note 6 and accompanying text. Although the appellants appear to have alleged that personal jurisdiction was lacking as to both Diana and Aaron, it is clear that Aaron was before the court. We draw this conclusion because Buzzy, who had custody of Aaron and filed the petition as father and custodian of the child, was before the court. The formal "service" of a summons and petition on Buzzy would have been superfluous
 
 
 [17]
 This footnote reads:
 In Bradley, the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune. Id., [80 U.S. (13 Wall.) ], at 352.
 Three possible meanings may be gleaned from the "clear absence of all jurisdiction" requirement; judicial immunity is lost (1) only if both subject matter and personal jurisdiction are absent; (2) if subject matter jurisdiction exists but personal jurisdiction is lacking; or (3) if subject matter jurisdiction is lacking. The first two possibilities seem foreclosed by the language in the footnote. In stating that, if subject matter jurisdiction exists, the judge is immune, the Court implies that the presence of personal jurisdiction is irrelevant in determining whether immunity exists. Therefore, the Court seems to adopt the third possibility and requires the absence of subject matter jurisdiction to defeat a claim of immunity.
 The Court in Stump emphasizes this point in its observation that "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." 435 U.S. at 359, 98 S.Ct. at 1106. Appellants in this case alleged a lack of personal jurisdiction as a result of a procedural error, failure properly to summon a necessary party before the court. This claim is distinguishable from an allegation that the minimum contacts within the territorial jurisdiction of the court as required by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), were absent. The error about which appellants complain is purely procedural; but even grave procedural errors will not operate to divest a judge of his immunity from suit. The Ninth Circuit, in a case involving a similar procedural error, refused to expose the judge to liability:
 [Judge] Martin's action in convicting O'Neil of contempt, an offense within his court's jurisdiction, although without the requisite papers to confer jurisdiction over this particular commission of the offense, is more analogous to a criminal court convicting for a nonexistent offense than to a probate court hearing a criminal case. It is the sort of "grave procedural error" that does not pierce the cloak of immunity.
 O'Neil v. City of Lake Oswego, 642 F.2d 367, 369 (9th Cir.1981); see also Williams v. Sepe, 487 F.2d 913 (5th Cir.1973); McAlester v. Brown, 469 F.2d 1280 (5th Cir.1972); Robinson v. McCorkle, 462 F.2d 111 (3d Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972).
 
 
 [18]
 The State of Florida similarly interprets this common law doctrine. See, e.g., Herskowitz v. Nesbitt, 419 So.2d 418, 419 (Fla.Dist.Ct.App.1982) (per curiam) (noting that the judge had subject matter jurisdiction in the case and therefore had immunity, citing Stump ); Rivello v. Cooper City, 322 So.2d 602, 607 (Fla.Dist.Ct.App.1975) ("In the case at bar, there was not a clear absence of all jurisdiction over the subject matter which is necessary before judicial immunity can be abrogated.") (citing Bradley v. Fisher )
 Appellants cite Farish v. Smoot, 58 So.2d 534 (Fla.1952), for the proposition that a lack of personal jurisdiction over a party divests a judge of his immunity from suit. In Farish, the defendant, a West Palm Beach municipal judge, had allegedly ordered the arrest and imprisonment of the plaintiff notwithstanding the plaintiff's release from prison on a habeas corpus writ issued by the circuit court. In an action for false imprisonment the Supreme Court of Florida affirmed entry of a judgment for the plaintiff, holding that the defendant judge had neither subject matter nor personal jurisdiction and was therefore not entitled to any immunity for his actions. Id. at 537. Farish, however, does not hold that absence of personal jurisdiction over a party alone subjects a judge to liability, because the judge in that case acted without subject matter jurisdiction as well. Indeed, the case is cited by Florida courts for the rule that absence of subject matter jurisdiction is required to divest a judge's immunity from suit. See Rivello, 322 So.2d at 607.
 
 
 [19]
 The Second Circuit in Green v. Maraio, 722 F.2d 1013 (1983), ignored the rationale in Rankin and found a judge immune from suit even where he acted in the absence of personal jurisdiction:
 Although it may be argued that once Green was sentenced the trial judge no longer had personal jurisdiction over Green and the case, Judge Ingrassia did possess subject matter jurisdiction. As demonstrated in Bradley, and by the Supreme Court's approving citation of Bradley in Stump, 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7, it is apparent that a judge who possesses subject matter jurisdiction is not within the "clear absence of all jurisdiction" posture which would deprive him of the use of the defense of judicial immunity. Judge Ingrassia--assuming, of course, for purposes of this appeal that all the allegations of the complaint are true--was not bereft of all jurisdiction, although such acts would be in excess of his jurisdiction. As explained in Bradley, and its progeny, a judge who acts in excess of his jurisdiction is still entitled to rely on the defense of judicial immunity.
 Green v. Maraio, 722 F.2d at 1017 (footnotes omitted).
 Indeed, even subsequent Ninth Circuit cases have severely limited the holding in Rankin. See O'Neil v. City of Lake Oswego, 642 F.2d 367 (9th Cir.1981) (failure to comply with procedural requirements of a statute conferring jurisdiction does not result in a loss of immunity); see also supra note 15.
 Beard v. Udall, 648 F.2d 1264 (9th Cir.1981), involved facts very similar to the present case. Following an Arizona divorce decree under which the father was awarded custody of the children, the mother moved to another county in the state and began working for a lawyer. While the children were visiting the mother, the lawyer petitioned a judge (in the county of the mother's residence) to modify the original divorce decree and to award custody of the children to the mother. The judge ordered the father to show cause why such relief should not be granted and issued a temporary restraining order preventing the father from removing the children from the county. The father brought a section 1983 action against the judge, in addition to others, and in particular alleged that the judge acted in the clear absence of jurisdiction by failing to follow certain procedural requirements, involving notice and hearing, before issuing the order to show cause and the temporary restraining order. Id. at 1267-68. The Ninth Circuit held that:
 The fact that a judge commits "grave procedural errors" is not sufficient to deprive a judge of absolute immunity. Stump 435 U.S. at 359, 98 S.Ct. at 1106. Thus, even if Beard's allegations that Judge Greer failed to adhere to the procedural rules established by the Arizona statutes are true, judicial immunity precludes Beard from recovering for this alleged wrongful act.
 Id. at 1269.
 The present case is essentially identical to Beard. Diana did not receive notice or a hearing prior to the entry of the November 22, 1977 dependency and temporary custody order, as required by statute. Thus, even in the circuit in which Rankin is binding precedent, Judge Hosemann would have immunity.
 
 
 [20]
 For example, a party may be required to make himself available for deposition, see Fla.R.Civ.P. 1.310, or be required to answer interrogatories, see Fla.R.Civ.P. 1.340, or even be required to produce or allow others to inspect certain documents in that party's possession, see Fla.R.Civ.P. 1.350, all prior to an evidentiary hearing to determine whether personal jurisdiction over the party exists. Indeed, where the defendant declines to appear, the court may enter a default judgment in favor of the plaintiff, see Fla.R.Civ.P. 1.500, thus forcing the defendant to expend time and money in collaterally attacking the judgment
 
 
 [1]
 The child was obviously not dependent. See ante p. 944 n. 2
 
 
 [2]
 See also Cline v. Flagler Sales Corp., 207 So.2d 709, 711 (Fla.Dist.Ct.App.1968) (per curiam):
 In an action for abuse of process it is not essential to show a termination of the proceeding in favor of the person against whom the process was issued and used, or to show want of probable cause or malice. The cause of action consists of the willful or intentional misuse of process; a willful and intentional misuse of it for some wrongful and unlawful object, or ulterior purpose not intended by the law to effect.
 
 
 [3]
 The fourteenth amendment due process clause provides that no state may "deprive any person of life, liberty, or property, without due process of law."
 
 
 [4]
 The officials' action was alleged to be negligent. 451 U.S. at 530, 101 S.Ct. at 1910. The Court's analysis in Parratt, however, has been extended to intentional deprivations. See Hudson v. Palmer, --- U.S. ----, 104 S.Ct. 3194, 3203-04, 82 L.Ed.2d 393 (1984)
 
 
 [5]
 Where injunctive rather than monetary relief is sought, Parratt does not apply. In such a situation the suit is normally brought prior to the deprivation, thereby putting the state on notice of the acts its employees plan to take. State resistance to the granting of injunctive relief serves to sanction its employees' acts making postdeprivation remedies insufficient under Parratt's rationale to satisfy the requirements of due process
 
 
 [6]
 Appellants allege no substantive constitutional claims. As the panel stressed, "appellants only argue that their rights to procedural due process were violated by the appellees individually and as a part of a conspiracy, and have apparently abandoned their equal protection and substantive due process claims."
 
 
 [7]
 The "color of state law" component of section 1983 may be satisfied by a showing that a judicial act of the defendant judge resulted from a corrupt conspiracy involving the judge and private parties. Although the judge may be immune from suit, the private parties who conspired with him act "under color of state law" for purposes of section 1983 suits. See Dennis v. Sparks, 449 U.S. 24, 27-29, 101 S.Ct. 183, 186-87, 66 L.Ed.2d 185 (1980)
 
 
 [8]
 Judge Hosemann's alleged conduct could also result in the loss of his employment benefits. See Fla.Stat. Sec. 112.3173 (Supp.1984)
 
 
 [9]
 See Herskowitz v. Nesbitt, 419 So.2d 418, 419 (Fla.Dist.Ct.App.1982) (per curiam); Rivello v. Cooper City, 322 So.2d 602, 607 (Fla.Dist.Ct.App.1975)
 One must distinguish between the judicial immunity a state judge would raise in defense of an abuse of process suit and the immunity he would interpose in defense of a section 1983 suit. In the former instance, the scope of immunity would be determined by state law. In the latter case, federal law must be applied. In Owen v. City of Independence, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980), the Supreme Court in addressing the issue of immunity in a section 1983 context, stated:
 In each of these cases [involving immunity from section 1983 liability], our finding of Sec. 1983 immunity "was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." ... Where the immunity claimed by the defendant was well established at common law at the time Sec. 1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity.
 (quoting Imbler v. Pachtman, 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976)). As the Court had previously noted: " 'A construction of [Sec. 1983] which permitted a state immunity defense to have controlling effect would transmute a basic [constitutional] guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.... The immunity claim raises a question of federal law.' " Martinez v. California, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (quoting Hampton v. Chicago, 484 F.2d 602, 607 (7th Cir.1973) (citation omitted), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974)).
 In the case of judicial immunity of federal judges one could argue that the doctrine is grounded in article III of the Constitution and it therefore could not be subject to statutory modification. In an effort to ensure the independence of the judiciary, the framers of the Constitution, in article III, section 1, provided that federal judges enjoy life tenure and mandated that their compensation not be diminished. The doctrine of judicial immunity achieves the same end; by insulating judges from monetary liability for their judicial acts in a case over which they had subject matter jurisdiction, the doctrine frees judges from certain pressures that may inappropriately affect their administration of justice and further secures the independence of the judiciary. Indeed, the Court in Randall v. Brigham, 74 U.S. (7 Wall.) 523, 537, 19 L.Ed. 285 (1869), hinted at the constitutional underpinnings of the doctrine by describing judicial immunity in conjunction with a judge's life tenure:
 In the United States, judicial power is vested exclusively in the courts. The judges administer justice therein for the people, and are responsible to the people alone for the manner in which they perform their duties. If faithless, if corrupt, if dishonest, if partial, if oppressive or arbitrary, they may be called to account by impeachment, and removed from office.... But responsible they are not to private parties in civil actions for their judicial acts, however injurious may be those acts, and however much they may deserve condemnation....
 The Court's decision in Pierson v. Ray is not to the contrary. That case held that Congress did not intend to abolish the judicial immunity of state judges in enacting section 1983. 386 U.S. at 554-55, 87 S.Ct. at 1218. This does not suggest that Congress could abolish the judicial immunity of federal judges, as section 1983 does not apply to such judges and the protection accorded federal judges under article III does not extend to state judges.
 
 
 [1]
 This case also points up the reason citizens and legislators are increasingly demanding that lawyers and judges charged with ethical violations be judged not by other lawyers and judges under the "good ole boy" system, but by persons outside the legal profession
 
 
 [2]
 Bear in mind that under Scott v. Dixon, 720 F.2d 1542 (11th Cir.1983), a court clerk issuing an arrest warrant is acting in a judicial capacity and entitled to absolute immunity. With this opinion, the en banc court places the constitutional rights of every citizen in this circuit at the mercy of any person acting in a quasi-judicial capacity. I can only hope that the court will limit the reach of the absolute immunity it now accords judges to the level of a general jurisdiction court and not extend it to clerical workers