**Stephanie HARRIS, Plaintiff-Appellee,**

v.

**Clint DEVEAUX, Defendant-Appellant.**

No. 84–8581.

United States Court of Appeals,
Eleventh Circuit.

Jan. 21, 1986.

Dorothy Y. Kirkley, Atlanta, Ga., for defendant-appellant.

Elizabeth A. Edelman, Joseph M. Winter, Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and WRIGHT *, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Clinton Deveaux, a judge of the Municipal Court of the City of Atlanta and defendant in a section 1983 action, appeals from the district court's denial of his motion for summary judgment on the ground of absolute judicial immunity. We hold: (1) this court has jurisdiction to hear an appeal from the denial of a motion for summary judgment on the ground of absolute judicial immunity and (2) a judge does not lose immunity by directing the entry of charges against a witness appearing before the judge in a pending case and based upon evidence before him. Accordingly, we reverse the decision of the district court.

## I. BACKGROUND

As a judge of the Municipal Court, Judge Deveaux presides over bond hearings, probable cause hearings, nonjury trials on ordinance violations, and requests for warrants.

On September 1, 1982, Phillip Jones, charged with rape and false imprisonment, appeared before Judge Deveaux for a preliminary hearing. At the hearing the prosecutor called only the complainant, Stephanie Harris. Harris testified that she met Jones at a night club and he offered her a ride to another club. According to Harris, Jones took her to a park and raped her. On cross-examination, Harris admitted that she had known Jones prior to the night of the alleged rape and that Jones had given her $5 at the night club. Counsel for Jones called Nona Tiedge, the investigating detective. Tiedge's testimony relayed the statement Jones had made to her at the police station: Jones' version was that Harris had propositioned him, that while in the park a male accomplice of Harris attacked Jones, and that Harris robbed Jones of $200 and ran off.

After hearing the testimony of Harris and Detective Tiedge, Judge Deveaux ordered the rape case against Jones transferred to the Superior Court of Fulton County but dismissed the false imprisonment charge. Judge Deveaux then stated that he was "going to insist that the victim of this case be charged with armed robbery." Despite the prosecutor's statement that the City Solicitor did not wish to arrest Harris and no charges would be brought against her unless Jones swore out a warrant, Judge Deveaux directed the detective to arrest Harris and ordered her charged with robbery.

Harris was arrested and detained. In chambers, the prosecutor, counsel for Jones, and Judge Deveaux discussed bond for her. Judge Deveaux was willing to release Harris on her own recognizance if the prosecutor would agree to the same reduction for Jones; the prosecutor refused. Harris obtained counsel, and several hours later a different municipal court judge permitted her release on her own recognizance.

On September 2, Harris appeared before Judge Deveaux for a preliminary hearing on the robbery charge. Judge Deveaux granted a continuance so that counsel for Harris could review the case. Upon learning that Harris had been released on her own recognizance, Judge Deveaux ordered the charges against Jones reduced to aggravated assault and released him on his own recognizance. The prosecutor objected both to the reduction of the charges and to Jones' release.

---

* Honorable Eugene A. Wright, U.S. Circuit Judge, for the Ninth Circuit, sitting by designation.

The prosecutor removed the case against Jones from the jurisdiction of the municipal court by taking it directly to the Fulton County grand jury. On September 16, the preliminary hearing on the charges against Harris was reconvened before Judge Deveaux. The Solicitor moved to dismiss the charges on the ground that Harris was a juvenile. The court agreed to the dismissal, but then ordered Harris detained so that custody could be transferred to juvenile authorities. Counsel for Harris objected on the ground that the charges before Judge Deveaux had been dismissed and no proceedings were pending in juvenile court. The prosecutor also objected to Judge Deveaux's order to hold Harris, stating that the proper procedure was for Jones to file a petition with the juvenile court. Harris was detained at the municipal court four hours and then transferred to the juvenile authorities.

On September 15, Harris initiated the current action pursuant to 42 U.S.C. § 1983. The district court identified five separate acts of which Harris complained:

(1) ordering the arrest of Harris on September 1;

(2) ordering or permitting her to be detained with Jones;

(3) ordering her arrest on September 16 and

(4) refusing to allow her counsel to take her to the juvenile authorities;

(5) releasing Jones on his own recognizance.

The district court concluded that judicial immunity was inapplicable to the first four of these actions. We disagree.

## II.   JURISDICTION

■ This court has jurisdiction under the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). This doctrine allows immediate appeal of interlocutory orders which "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal

from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). In *Nixon v. Fitzgerald*, 457 U.S. 731, 743, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982), the Supreme Court held it had jurisdiction from an order denying absolute immunity to a former president of the United States, noting prior decisions that found orders denying absolute immunity to be within the *Cohen* doctrine. *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979); *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

There is a sound reason why orders denying absolute immunity fall within the collateral order doctrine. Absolute immunity is meant to protect not only from liability, but from going to trial at all. *Mitchell v. Forsyth*, —— U.S. ——, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3911 (supp. 1985). Accordingly, after trial the defendant cannot obtain effective review of an order denying immunity. "Thus, the denial of a substantial claim of absolute immunity is an order appealable before final judgment." *Mitchell*, 105 S.Ct. at 2815. We think it clear that Judge Deveaux's immunity claim is substantial.

Nevertheless, Harris contends that not all orders denying claims of absolute immunity are appealable. Harris argues that two circuits have required that the claim of absolute immunity raise a "serious and unsettled" question. *Smith v. McDonald*, 737 F.2d 427 (4th Cir.1984), *aff'd*, —— U.S. ——, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985); *Chavez v. Singer*, 698 F.2d 420, 421 (10th Cir.1983). Harris, however, does not cite any case in which a court found it lacked jurisdiction on this ground and indeed it would be unusual for an order denying a "substantial" claim of immunity to not raise a "serious and unsettled" question. In any event, Judge Deveaux's appeal does raise such a question.

Harris also contends that denials of absolute immunity are appealable only if there are no questions of fact. *Williams v. Col-*

*lins,* 728 F.2d 721 (5th Cir.1984); *Evans v. Dillahunty,* 711 F.2d 828, 830 (8th Cir.' 1983). Once again, however, Harris cites no cases in which an appellate court declined review on this ground. Absolute immunity does not depend on good faith or reasonableness; thus it would be unlikely to find a case where disputed factual questions precluded review. Harris notes only one factual dispute: Judge Deveaux contends that Jones wanted to press charges, while Harris claims that only Judge Deveaux wished to do so. This dispute, however, is irrelevant to our consideration of Judge Deveaux's claim of absolute immunity. Accordingly we find no material factual dispute.

## III. IMMUNITY

In enacting 42 U.S.C. § 1983, Congress did not abrogate the doctrine of judicial immunity. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Judicial immunity is an absolute immunity; it applies even where a judge acts maliciously. *Id.* at 356, 98 S.Ct. at 1104. In *Stump,* the Supreme Court established a two-part test for determining whether a judge enjoys immunity from money damages under section 1983. First, whether the judge dealt with the plaintiff in a judicial capacity. *Id.* at 362, 98 S.Ct. at 1107. If not, then judicial immunity does not apply. If so, then the question is whether the judge acted in the "clear absence of all jurisdiction." *Id.* at 357, 98 S.Ct. at 1105. Here the district court ruled that Judge Deveaux's actions were in his judicial capacity, but that he acted in the clear absence of all jurisdiction.

### A. Whether Judge Deveaux Acted in his Judicial Capacity

In *Harper v. Merckle,* 638 F.2d 848 (5th Cir. Unit B), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981),[1] the court focused on the following factors in determining whether a judge's conduct constituted a judicial act:

(1) the precise act complained of ... is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

638 F.2d at 858. In the current case, three of these factors are clearly present. All of the events complained of occurred in Judge Deveaux's courtroom, the controversy centered around a case pending before Judge Deveaux, and the events arose directly and immediately out of the testimony before Judge Deveaux in that case.

Whether the precise act complained of is a "normal judicial function" presents a more difficult question. Judge Deveaux's orders arresting and detaining Harris obviously were actions within normal judicial functions. However, the arrest and detention of Harris on both occasions arose directly out of the fact that Judge Deveaux himself ordered the charges against Harris. We do not believe, and Judge Deveaux does not argue, that it is normally the task of a judge to file criminal charges in his own court. It seems particularly unusual for a judge to file charges over the objections of the prosecutor and investigating officer, and then conduct a preliminary hearing on whether the charges are supported by sufficient evidence to bind the defendant over for trial.

In *Harper,* the defendant judge encountered plaintiff in his chambers while plaintiff was delivering a check for child support to his ex-wife, a court employee. The judge was suspicious regarding whether plaintiff intended to fulfill his child support obligation, and attempted to swear in the plaintiff and question him. When the plaintiff refused, the judge had him arrested, immediately convened a contempt proceeding, found plaintiff in contempt and

---

**1.** The Eleventh Circuit, in *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

ordered him incarcerated. 638 F.2d at 850–54. The court denied the judge immunity, holding that while swearing in a witness and conducting a contempt proceeding met the first factor, because the judge had himself initiated the incident for personal reasons, the third and fourth factors weighed against a finding that the judge was acting in his judicial capacity. *Id.* at 859.

Harris directs us to two other decisions in support of her assertion that Judge Deveaux's acts were prosecutorial and therefore not a normal judicial function. In *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984), a county juvenile court judge had a contract with the county to collect delinquent child support payments. The judge employed persons to bring criminal actions in the juvenile court to enforce child support obligations and used the impending criminal actions as leverage to obtain consent orders. The Sixth Circuit found that initiating prosecutions is not a function normally performed by judicial officers, and therefore denied the judge immunity. 742 F.2d at 272. In *Lopez v. Vanderwater*, 620 F.2d 1229 (7th Cir.), *cert. dismissed*, 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980), a state judge was also a landlord. He found the plaintiff, a tenant he had asked to move, back in the building. The judge had the plaintiff arrested; and, at the station the judge wrote out charges and filled in a plea form waiving a jury trial and entering a guilty plea (the plea form contained an illegible signature, which the plaintiff denied was his); the judge then sentenced the plaintiff to eight months in jail. On these alleged facts, the Seventh Circuit found that the judge had acted as a prosecutor and that therefore he was not entitled to immunity. 620 F.2d at 1235.

*Sevier* and *Lopez* are both distinguishable in that the third and fourth factors that determine whether an act is judicial were absent.[2] The judges in both cases initiated charges not as a result of a case

brought before them by the parties, but as a result of events in their private, nonjudicial lives, events in which they had a personal stake. Accordingly, in *Sevier* and *Lopez*, the events did not center around a then pending case, and the plaintiff's confrontation with the judge did not arise out of a visit to the judge in his judicial capacity. Similarly, the judge in *Harper* initiated the proceedings out of his own concern for a personal acquaintance. Here, Judge Deveaux's actions arose out of judicial proceedings brought before him by independent parties. Unlike the judges in *Sevier* and *Lopez*, Judge Deveaux had no stake in the charges against Harris; the case had no connection with Judge Deveaux's nonjudicial life.

Judge Deveaux's action in initiating the charges against Harris does not precisely fit the first of the four factors for determining whether an act is judicial. As was pointed out in *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir.1985), however, "[t]here are situations in which immunity must be afforded even though one or more of the ... factors fails to obtain." This is such a situation. Here, the acts that truly injured Harris, the arrest and incarceration, are normal judicial functions and do fit the first factor. More importantly, the other three factors are clearly present, and we therefore conclude the actions were judicial. As we stated in *Harper*, "We can envision no situation—where a judge acts after he is approached *qua* judge by parties to a case—that could possibly spawn a successful § 1983 suit." 638 F.2d at 856 n. 9.

The policy reasons behind the doctrine of judicial immunity support our conclusion:

First, and foremost, a judge must be free to act upon his own convictions, without apprehension of personal consequences; second, the controversiality and importance of the competing interests in a case before a court make it likely that the losing party may be overly willing to

---

2. We do not express an opinion on whether this court would follow *Sevier*. We note that *Sevier* did not himself prosecute a case, but conspired with an employee to do so. In this circuit, a pretrial conspiracy with a party does not strip a judge of immunity. *Dykes v. Hosemann*, 776 F.2d 942 (11th Cir.1985) (en banc).

ascribe malevolent motives to the judge; third, judges faced with the prospect of defending damages actions and, perhaps, satisfying money judgments would be driven to wasteful and destructive self-protection devices and, moreover, may be less inclined to administer justice; fourth, alternative remedies such as appeal and impeachment reduce the need for private rights of action against judges; and fifth, the ease of alleging bad faith would make a qualified "good faith" immunity virtually worthless because judges would constantly be forced to defend their motivations in court.

*Dykes v. Hosemann*, 776 F.2d 942, 949 (11th Cir.1985) (en banc).

Judge Deveaux was presented with evidence by the parties before him. His own review of the evidence indicated that there were two different versions of the case; he determined, based on his own convictions, that the evidence justified further action against both the principals, rather than against only Jones. Judges must be free to act on their convictions. Judge Deveaux may have acted improperly in ordering the charges against Harris. We cannot say, however, that he was not acting in his judicial capacity.

### B. Whether Judge Deveaux Acted in the Clear Absence of All Jurisdiction

The district court found that Judge Deveaux acted in the clear absence of jurisdiction because he assumed the role of prosecutor, and nothing in Georgia law gives a judge jurisdiction to initiate proceedings. We believe that the district court should have considered the question of whether Judge Deveaux became a prosecutor in the context of the first prong of the *Stump v. Sparkman* test. As indicated above, we conclude that Judge Deveaux did act in his judicial capacity, rather than as a prosecutor.

We need not long consider whether Judge Deveaux acted in the "clear absence of all jurisdiction." Since the district court considered the motion for summary judgment, this court has held that the test is only satisfied if a judge completely lacks subject matter jurisdiction. *Dykes v. Hosemann*, 776 F.2d 942 (11th Cir.1985) (en banc). Georgia law provides that:

> Any mayor, recorder, or other proper officer presiding in any court of a municipal corporation shall have authority to bind over or commit to jail offenders against any criminal law whenever, in the course of an investigation before such officer, a proper case therefor is made out by the evidence.

O.C.G.A. § 17-7-22. Accordingly, Judge Deveaux clearly had subject matter jurisdiction over the charges against Harris. Nor was Judge Deveaux stripped of subject matter jurisdiction upon learning that Harris was a juvenile. In fact, Judge Deveaux followed the precise procedure called for by Georgia law:

> If it appears to any court in a criminal proceeding or a quasi-criminal proceeding that the defendant is a child, except in cases where the superior court has concurrent jurisdiction as provided in subsection (b) of Code Section 15-11-5, the case shall forthwith be transferred to the juvenile court together with a copy of the accusatory pleading and all other papers, documents, and transcripts of testimony relating to the case. The transferring court shall order that the defendant be taken forthwith to the juvenile court or to a place of detention designated by the court or shall release him to the custody of his parent, guardian, custodian, or other person legally responsible for him to be brought before the juvenile court at a time designated by that court. The accusatory pleading may serve in lieu of a petition in the juvenile court unless that court directs the filing of a petition.

O.C.G.A. § 15-11-13.

Based on the above, we find that Judge Deveaux is entitled to immunity for the acts complained of by Harris. Accordingly, the order of the district court is REVERSED and the case REMANDED to the district court for proceedings consistent with this opinion.

HATCHETT, Circuit Judge, specially concurring:

Although holding to the views expressed in my dissent in *Dykes v. Hosemann*, 776 F.2d 942 (11th Cir.1985) (en banc), I must concur.