WILLIAMS, District Judge, concurring: Although I concur in today’s result, I write separately, to address the scope of the absolute judicial immunity standard articulated by the majority. Specifically, I believe their analysis expands the.protections of judicial immunity further than is necessary to .decide this case and beyond the boundaries set by the Supreme Court, First, I disagree with the blanket assertion that for judicial immunity purposes, ordering persons removed from the courthouse is an obligation for judges and an ordinary function performed by judges.[1] To be sure, ordering a person removed from a courthouse can be an “ordinary” judicial function where the person disrupts, threatens, or otherwise impedes a judicial proceeding before the judge. Absent this connection to an ongoing judicial proceeding, however, the “nature of the function” performed is not necessarily judicial. See Forrester v. White, 484 U.S. 219, 226-29, 108 S.Ct. 638, 98 L.Ed.2d 556 (1988) (distinguishing between truly judicial alcts and “functions that judges may on occasion be assigned by law to perform,” and holding that although judges may be obligated to—and may “ordinarily”—hire and fire individuals in them staff, they are not entitled to absolute immunity for these administrative, rather than judicial decisions). In this case, according to Professor Stevens’ own allegations, she was removed from the building after she did not immediately comply with IJ Cassidy’s order to exit his courtroom so a sealed matter could proceed. As such, I agree that, on this record, IJ Cassidy’s removal of Professor Stevens was a normal judicial function, because he issued the order during and as part of an ongoing proceeding. Second, although I agree that the removal order “arose directly and immediately out of IJ Cassidy’s dealing with Plaintiff in his judicial capacity,” I disagree that in reaching this conclusion, we should rely on a metric of the temporal proximity—approximately fifteen minutes—be-tweep IJ Cassidy’s order that Professor Stevens exit the courtroom and her removal from the building. In my view, IJ Cassi-dy engaged with Professor Stevens in a judicial capacity not based on any temporal test ¡(15 minutes, an hour, a day, a week, etc.), but because he was on the bench presiding over an immigration matter when he ordered Professor Stevens to exit his courtroom. She apparently failed to comply, and IJ Cassidy ordered her removal from the building to carry out his initial order. Professor Stevens’ removal thus “arose directly and immediately” out of an order issued during an ongoing proceeding. If that were not the case, however, and the removal order were merely “temporally related” to Professor Stevens’ presence in IJ Cassidy’s courtroom, then IJ Cassidy could not “meaningfully be distinguished” from any employee, clerk, law enforcement officer, security guard, or building manager who could similarly initiate her removal from the building, and judicial immunity would not apply. Forrester, 484 U.S. at 229, 108 S.Ct. 538.[2] Finally, although I agree that on this record IJ Cassidy is entitled to judicial immunity, I am concerned about the question of Professor Stevens’ remedy for his conduct. The decision in Bradley v. Fisher, 80 U.S. 335, 13 Wall. 335, 20 L.Ed. 646 (1872), which established the doctrine of absolute judicial immunity, explained that the doctrine was designed to further the public interest in an independent judiciary, sometimes at the expense of legitimate individual grievances. Id. at 349; Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Bradley Court accepted those costs to aggrieved individuals only because the judicial system itself provided other means of protecting individual rights: “Against the consequences of [judges’] erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort.” Fisher, 13 Wall., at 354. However,, the facts- -of this case amply demonstrate that the Atlanta Immigration Court’s administrative procedures did not provide an avenue for meaningful review to safeguard Professor Stevens’ rights, especially in light of her history with IJ Cassidy and the Executive Office for Immigration Review.[3] The doctrine of judicial immunity is an important one, and opinions narrowing that doctrine must be thoughtfully circumscribed. By the same token, however, opinions expanding the doctrine demand commensurate caution. I agree that, on this record, IJ Cassidy may invoke judicial immunity for his order removing Professor Stevens from the building. But that conclusion is based on a far narrower understanding of what acts qualify- as “truly judicial acts” and are therefore entitled to absolute judicial immunity. Because I believe that the majority’s analysis of IJ Cassidy’s entitlement to judicial immunity has the potential to undermine the constitutional right of open access to public proceedings, I respectfully concur in the outcome only. . The cases cited by the majority to support this proposition all involve individuals who disturbed ongoing proceedings in the courtroom or otherwise obstructed adjudicatory matters before the judge. None address judicial immunity. . In Forrester v. White, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the Supreme Court held that judges’ decisions to hire and fire staff are not "judicial” because "a judge who hires or fires a probation officer cannot meaningfully be distinguished from a district attorney who hires and fires assistant district attorneys, or indeed from any other Executive Branch official who is responsible for making such employment decisions.” (citing Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676 (1880)); see also Gregory v. Thompson, 500 F.2d 59, 64-65 (9th Cir. 1974) (holding that a judge who himself forcibly expelled a litigant from his courtroom was not entitled to absolute immunity because his "choice to perform an act similar to that normally performed by a sheriff or bailiff'should not result in his receiving absolute immunity ... simply because he was a judge at the time.”). . The majority does not address the personal, non-judicial reasons that allegedly motivated IJ Cassidy to remove Professor Stevens from the building and that involved nearly the entire apparatus of the EOIR. See Harris v. Deveaux, 780 F.2d 911, 915 (11th Cir. 1986) (recognizing that judges’ acts may not be entitled to judicial immunity if they result from "events in their private, nonjudicial lives, events in which they ha[ve] a personal ■stake.”). Though they acknowledge that “Plaintiff had published criticisms of deportation proceedings in general and of Immigration Judge William Cassidy's performance in particular,” they fail to mention that based on these criticisms—including a piece that denounced IJ Cassidy, for mistakenly deporting an American citizen—IJ Cassidy and EOIR officials monitored and tracked Professor Stevens' visits to courtroom proceedings all over the Southeast. For example, in June 2009, the Atlanta Court Administrator emailed nineteen EOIR officials notifying them of Professor Stevens’ upcoming visit to Atlanta to obtain public records. In January 2010, IJ Cassidy (in Atlanta, GA) emailed an Assistant Chief Immigration Judge (in Falls Church, VA) to notify him that Professor Stevens was visiting the Stewart facility in Georgia. In April 2010, Professor Stevens visited an immigration facility in Lumpkin, Georgia. Upon her arrival, the Court Administrator immediately emailed EOIR public relations staff that Professor Stevens "want[s] access to view the court hearing-today ... Please advise!” According to the record, no other individual .had ever attracted this kind of attention from EOIR officials. Moreover, about a week after the expulsion giving rise to this lawsuit, an employee in'the Department of Justice’s Public Affairs Office emailed his colleagues regarding the "[pjossi-ble banning of blogger from immigration court.” These facts animate the claim that the process available to Professor Stevens was not just "displeasing” but was arguably inadequate as a check on IJ Cassidy’s misconduct.